UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MARIA ADAMES,

    Petitioner,

-vs-                                        Case No. 6:10-cv-1066-Orl-28GJK
                                         (Criminal Case No.: 6:07-cr-107-Orl-28GJK)

UNITED STATES OF AMERICA,

    Respondent.
_____/

## AMENDED ORDER[1]

This case is before the Court on the second amended motion to vacate, set aside, or correct an illegal sentence filed by Maria Adames pursuant to 28 U.S.C. § 2255 (Doc. No. 12). The Government filed a response (Doc. No. 14) and a supplemental response (Doc. No. 22) to the second amended section 2255 motion in compliance with this Court's instructions and with the *Rules Governing Section 2255 Proceedings for the United States District Courts*.

---

[1]This Amended Order amends the Order entered on March 16, 2012 (Doc. No. 31) to correct certain typographical errors. In particular, the second full sentence of the third paragraph on page 5 is deleted and replaced as follows: "Petitioner states that counsel failed to 'effectively challenge' the amount of cocaine contained in the packages, but she does not support her claim by pointing to specific instances in the record where counsel acted deficiently." The second full sentence of the paragraph numbered "3." on page 10 is deleted and replaced as follows: "A copy of this Order and the judgment shall also be filed in criminal case number 6:07-cr-107-Orl-28GJK. " In all other respects, the Court's Order of March 16, 2012 (Doc. No. 31), is unchanged. Under Federal Rule of Civil Procedure 60(a), the Court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The Court may do so on motion or on its own, with or without notice. *Id.*

Petitioner filed a reply (Doc. No. 16), a supplemental reply (Doc. No. 19), and a second supplemental reply (Doc. No. 27) to the responses.

Petitioner alleges three claims for relief in her motion: first, trial counsel was ineffective for failing to pursue a plea agreement; second, trial counsel was ineffective for failing "to challenge the Government witness about [the] quantity of drugs in five packages"; and third, trial counsel "failed to challenge the miscalculation of [the] Sentencing Guidelines."

## I. *Procedural History*

Petitioner and numerous other individuals were charged in a five-count indictment with the commission of various crimes (Criminal Case No. 6:07-cr-107-Orl-28GJK, Doc. No. 200).[2] Petitioner was charged in count one only (conspiracy to possess with intent to distribute and to distribute cocaine hydrochloride). A jury trial was held, and Petitioner was found guilty as charged. *See* Criminal Case Doc. No. 969. The jury also found that the amount of cocaine hydrochloride involved in the offense was five kilograms or more. The Court adjudicated Petitioner guilty of conspiracy to possess with intent to distribute 5 kilograms or more of cocaine hydrochloride and sentenced her to imprisonment for a total term of 134 months, to be followed by supervised release for a term of 5 years. *See* Criminal Case Doc. No. 1119.

---

[2]Hereinafter Criminal Case No.6:07-cr-107-Orl-28GJK will be referred to as "Criminal Case."

2

Petitioner filed a direct appeal with the Eleventh Circuit Court of Appeals, which affirmed in an unpublished opinion. *See* Criminal Case Doc. No. 1369.

## II. *Analysis*

### A. *Claim One*

Petitioner argues that she received ineffective assistant of counsel because counsel failed to pursue a plea agreement. She mentions that "most" of her co-defendants pled guilty.

The failure to pursue a plea bargain does not demonstrate ineffective assistance of counsel, particularly when there is no suggestion that the prosecutor would have offered one. *Bridges v. United States*, No. 04 Civ. 2715(HB), 2005 WL 1798084 at *6 (S.D.N.Y. August 1, 2005). Here, Petitioner provides no evidence whatsoever that the Government proposed a plea agreement or that it was considering offering her one. Instead, she speculates that she would have received a lesser sentence if she had pled guilty. Based on this speculation, she baldly asserts that she would have accepted a plea agreement. Her speculation is unsupported.

In addition, Petitioner has not presented any objective evidence to corroborate her claim that she would have accepted a purported plea offer. Thus, she fails to prove both the existence of a plea offer and her alleged willingness to accept such an offer. Under the circumstances, the Court finds that Petitioner has not shown deficient performance on the part of counsel or that she sustained prejudice.

### B. *Claim Two*

Petitioner states that trial counsel was ineffective for failing "to challenge the Government witness about [the] quantity of drugs in [the] five packages." She argues that the Government "speculated that the other four packages, not packaged by the witness' criminal network, contained 3 kilograms of cocaine in each package" and that counsel did not challenge this assumption. She also claims that "counsel was ineffective in presenting the law on this matter."

#### 1. *Factual Background*

At the end of 2005, Miguel Montes began working for a drug organization that obtained cocaine from Puerto Rico and mailed it to the Orlando area. *See* Doc. No. 1187 at 128-30. Mr. Montes recruited individuals to receive the packages containing cocaine. *Id.* at 130-31. In January of 2007, Mr. Montes began obtaining cocaine for himself from the Puerto Rican cocaine suppliers via Express Mail. *Id.* at 131-32. The suppliers gave the cocaine to Mr. Montes, and he sold the cocaine and paid the suppliers $16,500 per kilogram. *Id.* at 132-33. Mr. Montes receive one to three kilograms of cocaine in each Express Mail package. *Id.* at 133. During the first week, he received four kilograms of cocaine, but he later received as much as 40 kilograms of cocaine in one week. *Id.* at 134. He received at least one box of cocaine from Puerto Rico each day, and sometimes he received several boxes. *Id.* at 137.

Mr. Montes hired individuals as "recruiters," which included Demaris Cruz, Giorliana Cortijo, Iris Pancheo, and Luis Gonzales; these individuals, in turn, hired others

to receive the packages in the mail. *Id.* at 134-35. The recruiters gave Mr. Montes the addresses of those individuals receiving the packages, and Mr. Montes provided those addresses to the suppliers in Puerto Rico. *Id.* at 135-36.

Mr. Cortijo began working for Mr. Montes in March of 2007, and he located individuals who would receive cocaine-filled packages by mail for him. *Id.* at 44-45, 61. Mr. Cortijo recruited four individuals to receive cocaine packages, including Petitioner. *Id.* at 44-45. Mr. Cortijo told Petitioner that she would be paid $500 to receive packages of drugs at her house, and she agreed. *Id.* at 47-48.

Petitioner states in her second amended section 2255 motion that she received packages from two separate criminal networks: the Montes group, and the Jonathan Melendez group. The Melendez group conspired with Montes group to distribute cocaine throughout the Orlando area. *See* Doc. No. 1263 at 17-18. Petitioner states that she received one parcel containing one kilogram of cocaine from the Montes group and that her boyfriend was involved in a conspiracy with the Melendez group whereby she and her boyfriend received four packages of cocaine. She contends that the amount of cocaine in those four packages was speculative.

2. *Discussion*

Petitioner's allegations with regard to this issue are vague and conclusory and are inadequate as a matter of law to raise a cognizable claim of ineffective assistance of counsel. Petitioner states that counsel failed to "effectively challenge" the amount of cocaine contained in the packages, but she does not support her claim by pointing to specific

instances in the record where counsel acted deficiently. For example, she does not identify allegedly deficient cross-examination on the part of counsel or specify exactly what matters should have been presented to the Court by counsel.

Petitioner "must identify the specific acts or omissions of counsel that form the basis for [her] claim of ineffective assistance." *See United States v. Moya-Gomez*, 860 F.2d 706, 763-64 (7th Cir. 1988). Petitioners bald assertions are inadequate to overcome the presumption that counsel acted reasonably, *see Matura v. United States*, 875 F. Supp. 235, 237 (S.D.N.Y. 1995), and her failure to specify her allegations does not meet the requirement of *Strickland*.

The Court notes that counsel actually argued some of these matters during trial and sentencing. During closing argument, Petitioner's counsel stated that Petitioner received a package addressed to someone else, that she was not familiar with the package, and that she opened the package because she was confused. *See* Doc. No. 1262 at 34. He then stated that Petitioner discovered *one* kilogram of cocaine inside the package and that she immediately threw the package in the trash. *Id.* In addition, he argued that Petitioner was unaware that any of the other packages contained drugs and that there were "two separate groups" involved in this case, which created a "problem" for the Government in prosecuting this case. *Id.* at 40, 44.

During the cross-examination of Agent Weiss at sentencing, at the Court's request, Petitioner's counsel discussed his position as to the amount of cocaine that should be attributable to Petitioner:

> MR. DALY [Petitioner's counsel]: All right. The 150 kilo quantity reflected in the presentence report reflects the Montes organization receiving

> 35 kilos a week forever, and it just maxes out. But what we don't know is what the Melendez organization was doing. We don't have any information with how much cocaine the Melendez organization received over a period of time. What we know is that there were four transactions involving my client and the Melendez organization, but we don't seem to know anything more than that. And so when we tally up how much cocaine she ought to be accountable for, my first position is those five occasions. I would think that her knowledge of the April 13 [package] wasn't proven at trial, wasn't attempted to be proven at trial and it's just related offense conduct. She maintains she didn't know, she wasn't a knowing participant at that time. But be that as it may, there are five transactions and those quantities I believe would be the top end of what she should be accountable for.

See Doc. No. 1264 at 19-20. Petitioner's counsel again discussed the matter during argument at sentencing:

> MR. DALY: In the Montes conspiracy she had one kilogram and the reason for that objection is that the guidelines --
>
> THE COURT: So really your argument is that . . . only one kilogram is attributable to her.
>
> MR. DALY: One kilogram as to the Montes organization which is the basis for the 150. And the basis for that objection is essentially 1 B 1.3 where it says that quantities of contraband trafficked by the organization prior to participant joining the conspiracy or undertaking the jointly undertaken activity are not attributable to that defendant. So her conspiracy begins May 31 with one kilo that she stole and essentially that's her participation in the Montes organization. She joined and withdrew all in the same day. So she gets that one kilo.
>
> It doesn't explain the five kilos that the jury found her guilty of and . . . the jury must have agreed that there was another cell operating out there that wasn't the Montes organization or that anybody involved in cocaine is all a member of a Colombia broader conspiracy, but nonetheless, the same analysis would apply to what I'll call the Melendez organization or the Alba Rivera organization.

Id. at 48-49. Consequently, the record reflects that, at trial and at sentencing, Petitioner's counsel did discuss the quantity of cocaine that was attributable to Petitioner. Certainly,

7

Petitioner's counsel attempted to convince the jury and the Court as to the limited amount attributable to Petitioner.

Under the circumstances, the Court finds that Petitioner has failed to demonstrate that counsel's conduct was unreasonable with regard to this matter or that she sustained prejudice.

C.  *Claim Three*

Petitioner argues that trial counsel "failed to challenge the miscalculation of [the] Sentencing Guidelines." According to Petitioner, she "admitted to receiving five packages of drugs, one with the known contents of 1 kilogram of cocaine and four with the foreseeable contents of 1 kilogram of cocaine each." Thus, she claims that she should have been held accountable for a total of 5 kilograms of cocaine, which would have resulted in a base level of 32. Petitioner further claims that she should have received a two-point decrease for the "safety valve" and a two-point decrease for being a minor participant.

As discussed above, Petitioner's counsel did challenge the calculations under the Sentencing Guidelines and specifically made arguments with regard to the amount of cocaine that should have been attributable to Petitioner. Petitioner's counsel engaged in a detailed effort to minimize the amount of cocaine attributable to Petitioner for scoring under the Sentencing Guidelines. The Government argued that the amount should have been between 150 kilograms of cocaine, and the Court ultimately found the amount to be between 15 and 50 kilograms. *See* Doc. No. 1264 at 61.

As to the safety valve reduction,[3] Petitioner's counsel argued for this at sentencing. In fact, Petitioner testified at the sentencing hearing, and the Court declined to apply this provision because it found Petitioner's testimony not credible at sentencing and because, by her own admission, she had not been truthful in the past. *Id.* at 45.

As to the minor participant provision, the evidence established that she had participated in and had knowledge of the shipment of many packages of cocaine containing at least one to three kilograms of cocaine each over a period of many months. Thus, she was not a minor participant.

In addition, the Court notes that Petitioner's sentence was considerably less than the amount under the Sentencing Guidelines. Under the circumstances, the Court finds that Petitioner has failed to demonstrate that counsel acted unreasonably with regard to this matter or that she sustained prejudice.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. The second amended motion to vacate, set aside, or correct an illegal sentence pursuant to 28 U.S.C. § 2255 filed by Maria Adames (Doc. No. 12) is **DENIED**.

2. This case is **DISMISSED** with prejudice.

---

[3] The safety valve provision, in pertinent part, requires that a defendant, at or before sentencing, provide the Government with all the information and evidence he or she has concerning the offense. U.S.S.G. § 5C1.2(a)(5).

3. The Clerk of the Court shall enter judgment accordingly and is directed to close this case. A copy of this Order and the judgment shall also be filed in criminal case number 6:07-cr-107-Orl-28GJK.

4. The Clerk of the Court is directed to terminate the section 2255 motions (Criminal Case Doc. Nos. 1389, 1410, and 1411) filed in criminal case number 6:07-cr-107-Orl-28GJK.

5. This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner has failed to make a substantial showing of the denial of a constitutional right.[4] Accordingly, a Certificate of Appealability is **DENIED** in this case.

**DONE AND ORDERED** in Orlando, Florida, this 20 day of March, 2012.

JOHN ANTOON II
UNITED STATES DISTRICT JUDGE

---

[4]Pursuant to Rule 11 of the *Rules Governing Section 2255 Proceedings for the United States District Courts*,

> The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue. If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2). If the court denies a certificate, a party may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22. A motion to reconsider a denial does not extend the time to appeal.

Copies to:
OrlP-2 3/20
Maria Adames
Counsel of Record